UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

BARBARA E. WEBB,　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　) Case No.: 2:10-cv-0112
　　　　　　　　　　　　　　　　　　　) SENIOR JUDGE NIXON
　　　　　　　　　　　　　　　　　　　) MAGISTRATE JUDGE BROWN
MICHAEL J. ASTRUE,　　　　　　　　)
Commissioner of Social Security,　　　　)
　　　　Defendant.　　　　　　　　　　　)

To:　　The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for disability and disability insurance benefits (DIB), as provided under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383. The case is currently pending on plaintiff's motion for judgment on the administrative record and the Defendant's response. (Docket Entry No. 11, 12, 13, 14). The Magistrate Judge has reviewed the administrative record and supplements (hereinafter "Tr."). (Docket Entry 7). For the reasons stated below, the Magistrate Judge recommends that the Plaintiff's motion for judgment be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

**I. INTRODUCTION**

Plaintiff protectively filed her application for DIB on July 10, 2007. (Tr. 18). Plaintiff's earnings record shows that she had sufficient quarters of coverage to remain insured through December 31, 2006. (Hereinafter "the date last insured"). (Tr. 18, 100). At first, Plaintiff alleged

1

disability as of April 1, 2001, but later amended her onset date to January 1, 2006. (Tr. 177).

Plaintiff's claim was first denied on January 18, 2008 and at reconsideration on April 14, 2008.

(Tr. 18). Plaintiff's request for a hearing before an administrative aw judge ("ALJ") was granted

and took place on September 22, 2009. (Tr. 29-41). The Plaintiff and a vocational expert ("VE")

testified at the hearing. *Id*. The ALJ's written decision, dated December 16, 2009, denied

Plaintiff's claim. (Tr. 15-28). The ALJ made the following findings of fact and conclusions of

law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 2006 through her date last insured of December 31, 2006 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: chronic obstructive pulmonary disease (COPD), sinusitis, hypertension, and asthma (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404. 1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

6. Through the date last insured, the claimant was capable of performing past relevant work as a receptionist and secretary. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2006, the amended onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(f)).

(Tr. 20-23).

Plaintiff requested review of the ALJ hearing and decision by the Appeals Council ("AC") on February 16, 2010. (Tr. 6-8). Subsequently on October 6, 2010, the AC denied the request stating they found no reason to review the ALJ's decision, rendering the ALJ's decision as the final decision of the Commissioner of Social Security in this case. (Tr. 1-5). The Plaintiff timely filed this civil action, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. *Id*.

## II.  REVIEW OF THE RECORD

The Plaintiff was a sixty-five-year-old woman at the time of the ALJ's decision with an alleged onset date of January 1, 2006. (Tr. 33). She earned her high school education in 1963. *Id*. Her past relevant work history was of a secretary and receptionist. *Id*.

### A.  Medical Evidence

The administrative record includes voluminous information regarding the plaintiff's medical history from 2001 to 2009. From 2001 to 2007, the Plaintiff was seen by her primary care doctor, Dr. Truman Smith.

From March, 2001 to October, 2002, the Plaintiff was diagnosed with hypertension, Chronic Obstructive Pulmonary Disease ("COPD"), and bronchitis. (Tr. 254-269). By October of 2002, her hypertension was controlled by Norvasc, Altace, Lasix, and Potassium. (Tr. 254-264). Dr. Smith also prescribed some antibiotic and Prednisone for her COPD and bronchitis, which the Plaintiff said made her feel "some better." (Tr. 256).

In February, 2003, the Plaintiff went to Dr. Smith complaining of increased problems with urinary urgency and incontinence and to recheck her asthmatic bronchitis. (Tr. 253).

Arrangements were made for her to see Dr. Silas Terry. *Id*. Plaintiff went to Dr. Terry on February 12, 2003, and was diagnosed with vaginal prolapse and stress incontinence. (Tr. 305-306). A colonoscopy was performed at Livingston Regional Hospital on February 24, 2003, due to rectal bleeding with a history of colitis. She was diagnosed with internal hemorrhoids and diverticulosis. (Tr. 460). An EGD and biopsy was performed for epigastric pain with weight loss and she was diagnosed with early gastroduodenitis, early PUD and sliding hiatal hernia. (Tr. 461). Surgery was performed in August 2003, where there were no complications during surgery or post-operation. (Tr. 314-323).

On June 30, 2005, the Plaintiff returned to Dr. Smith complaining of situation anxiety. She was prescribed Lexapro for two weeks and Xanax for two to four weeks. (Tr. 238). She returned in July, 2005, and her depressive symptoms were improved. *Id*.

From August, 2005 to November, 2005, the Plaintiff complained of little cough with no sputum. (Tr. 235-236). On November 17, 2005, Dr. Smith diagnosed her with hypothyroidism and started on Synthroid due to weakness and fatigue. (Tr. 233). She was much improved in December 2005. (Tr. 232).

In June 2006, a computed tomography (CT) scan of the Plaintiff's sinuses revealed sphenoid sinusitis and rhinitis. (Tr. 297). The Plaintiff was noted to have almost a total opacification of the left side of the sphenoid sinus. *Id*. Otherwise, she was well aerated and had normal sinuses. *Id*. Moderate mucosal hypertrophy was also noted. *Id*. Dr. Smith gave her a shot of Kenalog and continued Augmentin twice daily for ten more days. (Tr. 228).

In August 2006, Plaintiff was suffering from chronic sinusitis and nasal sinus surgical treatment was discussed with her ENT. (Tr. 225). Plaintiff's asthma was noted as doing well with no significant cough or wheeziness. *Id.*

On September, 22, 2006, Plaintiff's asthma and COPD were stable. (Tr. 224). Treatment with inhalers and medication was continued. Ms. Webb's hypertension had continued to be well controlled up until then. *Id.* At that time, Dr. Smith noted that her hypertension was poorly controlled. *Id*. Plaintiff returned on October 11, 2006, and her blood pressure log showed that she was quite hypertensive. Diovan was added at that time. (Tr. 223). Plaintiff tolerated the Dioven and hypertension was showed to be improved by October 26, 2006. (Tr. 222).

In January 2007, Plaintiff went to Dr. Smith in follow up for hypertension. (Tr. 219). At that time, her hypertension and her asthma were stable and Plaintiff had no significant cough and no sputum production, fever, chills, or hemoptysis. *Id*.

From March, 2007 to July, 2007, Plaintiff was treated by Dr. Smith for increased cough and wheeziness. (Tr 208-218). She was diagnosed with early bronchitis and started on DuoNeb, Keflex and Siguliar. (Tr. 212). By July 5, 2007, Plaintiff's bronchitis was resolving. (Tr. 208-210).

On August 16, 2007, Plaintiff went to the emergency room at Cookeville Regional Medical center for increasing shortness of breath and exacerbation of her COPD. (Tr 410-411). Dr. David J. Henson's assessment included acute exacerbation of chronic bronchitis, asthmatic bronchitis, chronic hypoxemia, chronic anxiety disorder, and possible T7 thoracic vertebra collapse, probably from long history of corticosteroid use. (Tr. 408). Plaintiff improved after treatment with oxygen, Albuterol and Atrovent nebulizers, bronchodialators, along with

5

spirometry, and Percocet for her back pain. (Tr. 401). She was discharged on August 24, 2007, with final diagnoses including asthmatic bronchitis exacerbation, osteoarthritis, chronic anemia, depression, chronic anxiety, gastroesophageal reflux disease, history of orthopedic fractures, and history of nephrolithiasis. (Tr. 399-314, 444-449).

On November 15 ,2007, Spirometry testing performed by Michael T. Cox, M.D., indicated Plaintiff had moderate breathing restrictions. (Tr. 544-545). Two days later, on November 27, 2007, Plaintiff went back to Dr. Cox with increased shortness of breath, wheezing and sputum production. (Tr. 540-543). X-rays of the chest revealed some thickening of the bronchial tubes consistent with chronic bronchitis. *Id.* Diagnoses included acute bronchitis, COPD, and COPD with acute exacerbation. (Tr. 543).

December 17, 2007, Plaintiff went to Dr. Samantha E. McLerran, M.D., for evaluation of her cough. (Tr. 537-539). Plaintiff claimed to have had two prior episodes of bronchitis and asthma since February. *Id*. Plaintiff claimed she was waking up with bad headaches. *Id.* Additionally, Plaintiff's husband had started smoking in the basement. *Id*. Plaintiff was concerned about having TB. *Id*. Dr. McLerran diagnosed Plaintiff with a cough and COPD, decompensated. (Tr. 539).

On December 26, 2007, Plaintiff went to Cookeville Regional Medical Center due to shortness of breath. (Tr. 440-441). The clinical impression was acute dyspnea, acute exacerbation of COPD, and strep pharyngitis. *Id*. She was treated with Solu Medrol and received prescriptions for Augmentin and Prednisone. *Id.* An appointment with pulmonologist was scheduled for January, 2008. (Tr 440).

In January of 2008, state agency physician, Susan Warner, M.D., reviewed Ms. Webb's medical evidence. (Tr. 325-328). Dr. Warner noted that there were no emergency room records or intensive treatment records during the period of alleged disability. (Tr. 328). She opined that the sinus condition was not severe. *Id*. She noted that the record contained no lung functioning data and she concluded that she was unable to assess Ms. Webb's functional limitations. *Id*.

On January 8, 2008, Plaintiff went to Dr. Mark Kriskovich of Upper Cumberland Otolaryngology, M.D., for sinusitis. (Tr. 427-430). A CT of the sinuses revealed bi-maxillary mucoperiosteal thickening with small air fluid levels consistent with acute and possible chronic sinusitis, and turbinate hypertrophy. *Id*.

February 29, 2008, Plaintiff visited Dr. McLerran for COPD, GERD and hypertension. (Tr. 514-516). Plaintiff's blood pressure was poorly controlled on her medications. *Id*. She was diagnosed with essential hypertension, esophageal reflux, and COPD. (Tr. 516).

On June 25, 2008, Plaintiff returned to Dr. McLerran for worsening symptoms of COPD including increasing shortness of breath, worsening dyspnea, increased wheezing, and increased sputum production. (Tr. 507-511). Dr. McLerran diagnosed and treated Plaintiff for an acute exacerbation of COPD. (Tr. 510). Plaintiff received injections of Kenalog and Rocephin and prescriptions for Prednisone, Avelox, and Xanax.

Plaintiff returned to Dr. McLerran on October 9, 2008, with upper respiratory tract symptoms, shortness of breath, weakness, nausea, vomiting, chest congestion, ear pain, and wheezing. (Tr. 485-490). Examination revealed moderate generalized oropharynx inflammation was present and rapid, shallow breathing along with severe prominent scattered wheezing. (Tr. 488). She was diagnosed with acute bronchitis and COPD, decompensated. *Id*. Plaintiff made it

7

to the front office when she collapsed due to hypoxia. (Tr. 489). Afterwards, Plaintiff was admitted to Livingston Regional Hospital from October 9, through October 14, 2008. (Tr. 454-455). She was diagnosed with acute chronic obstructive pulmonary disease exacerbation, anxiety disorder, hypertension, seasonal allergies, and hypothyroidism. (Tr. 445). On October 14, 2008, Dr. McLerran wrote a letter to the Social Security Office describing the Plaintiff's current diagnoses, medication requirements, medical condition, and symptoms as well as her opinion that Plaintiff was disabled. (Tr. 547).

On July 23, 2009, Plaintiff went to Dr. McLerran for swelling in her legs and some left hand numbness. (Tr. 470-472). Plaintiff self reported a history of moderate lower extremity pain, swelling, and redness beginning two weeks prior. (Tr. 470). Dr. McLerran diagnosed Plaintiff with venous insufficiency and edema of the lower extremities. (Tr. 472). Lasix and Micro-K oral capsules were proscribed. *Id*. Plaintiff suffered a stroke on July 26, 2009, and was treated at Livingston Regional Hospital. (Tr. 550-562). She was re-examined at Erlanger Medical Center on July 28, 2009. (Tr 473-476).

Dr. McLerran wrote her second letter to the Social Security Administration on August 6, 2009, stating the Plaintiff's then-current medical condition, as well as her opinion that the Plaintiff was disabled. (Tr. 546).

On August 30, 2009, Plaintiff returned to Livingston Regional Hospital due to coughing, severe headache, and shortness of breath. (Tr. 563-667). Dr. McLerran diagnosed the Plaintiff with acute on chronic exacerbation of chronic obstructive pulmonary disease and mildly hyponametric. *Id*.

8

B. Testimonial Evidence

The Plaintiff is married with no children. (Tr. 31). Plaintiff testified that she quit smoking 1 ½ month prior to the hearing. (Tr. 35). Plaintiff said she had a stroke in 2009, and she had not smoked since that time. (Tr. 36). Her husband smoked "like a freight train," but he had stopped smoking in the house two to three years prior. *Id*. Plaintiff testified that she quit her job in 2001 after being hospitalized for pneumonia. (Tr. 33). She stated that around the time she stopped working, she did not have energy and would sometimes start coughing while at work. (Tr. 36). Around 2005 or 2006, there was one point that the Plaintiff would need help bathing and grooming. (Tr. 37). However, the helper was no longer coming at the time of hearing. *Id*. Plaintiff testified at the hearing that she takes an hour to two hour naps just to get through the day, and this had been going on for two and a half years. *Id.* The Plaintiff testified that in 2005 she was walking around the block for exercise a couple of times a week. (Tr. 39). However, she stated that she has not been able to do that for the last four or five years. *Id.*[1]

Lastly, the vocational expert testified that the Plaintiff's work history included working as a secretary, which was classified as sedentary, skilled work. (Tr. 40). Also, the vocational expert stated that the Plaintiff worked as a receptionist, which is sedentary, semiskilled work. *Id*.

### III. CONCLUSIONS OF LAW

A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The

---

[1] In addition to the plaintiff's testimony, the Plaintiff's representative stated during the hearing that the only medical records prior to 2007 where those of Dr. Truman Smith. (Tr. 34).

purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B. <u>Proceedings at the Administrative Level</u>

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)     If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.
>
> (2)     If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423 (d)(2)(B).

C. Plaintiff's Statement of Errors

Plaintiff alleges two errors in the ALJ's decision: (1) the ALJ erred in rejecting the opinion of Dr. McLerran; (2) the ALJ erred in failing to pose a hypothetical to the vocational expert that considered Plaintiff's fatigue and coughing.

**I. The ALJ's consideration of Dr. McLerran's medical opinion**

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

The Plaintiff argues that Dr. McLerran's assessment is consistent with the medical record and should not have been rejected. The problem with the Plaintiff's position is that Dr. McLerran did not begin treating Plaintiff until December 17, 2007, nearly a year after her DLI date of December 31, 2006.³ Further, Dr. McLerran never professed to offer an opinion relating back to the Plaintiff's condition prior to the DLI.

To qualify for disability insurance benefits, Plaintiff must prove that she became disabled prior to the expiration of her insured status. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). The Sixth Circuit has observed that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 Fed. Appx. 841, 845 (6th Cir. 2004). In fact, record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (noting that evidence of a medical condition diagnosed after the date last insured was only "minimally probative" of claimant's condition during the insured period).

Here, Dr. McLerran did not even see the Plaintiff until December 17, 2007, which was almost an entire year after the Plaintiff's DLI. (Tr. 537-539). Dr. McLerran wrote to the Social Security Administration twice describing the Plaintiff's disability – once on October 14, 2008 and again on August 6, 2009. (Tr. 547, 546). The first letter was nearly two years after the Plaintiff's DLI and the second letter was over two-and-a-half years after the DLI. Neither of Dr.

---

³ Plaintiff admitted that Dr. Truman Smith's records were the only medical records prior to 2007. (Tr. 34).

McLerran's letters or her diagnostic opinions include any reference to the Plaintiff's condition prior to her date last insured. The Magistrate Judge believes that Dr. McLerran's opinion is therefore not relevant to the question of whether Plaintiff was actually disabled by her condition prior to her DLI.

**II. The ALJ's hypothetical question posed to the vocational expert**

The Plaintiff argues that the ALJ failed to pose a hypothetical to the vocational expert (VE) that considered the Plaintiff's fatigue and coughing . The Magistrate Judge believes that the ALJ properly dismissed the Plaintiff's disability claim because the Plaintiff could return to past relevant work. Therefore, the Magistrate Judge believes the ALJ was not required to pose a hypothetical question to the VE regarding the Plaintiff's fatigue and coughing impairments.

Step four of the five-step sequential evaluation process asks whether the Plaintiff's impairment prevents her from doing her past work. *Moon*, 923 F.2d at 1175. If not, then the Plaintiff is not disabled. *Id.* Furthermore, during the first four steps of the sequential process, the Plaintiff has the burden of proof; this burden shifts to the ALJ only at step five. *See Young v. Secretary of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Secretary of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987). Thus, the ALJ's denial of Plaintiff's disability claim at step four is proper if there is substantial evidence in the record to support the conclusion that Plaintiff could perform her past relevant work and had therefore failed to make a prima facie case of being under a disability. *See Young,* 925 F.2d at 148.

At the ALJ hearing, the ALJ questioned the VE as to the physical and mental demands of Plaintiff's past relevant work. (Tr. 39-40). The VE testified that both of her past relevant

13

positions were at the sedentary level of exertion. (Tr. 40). The ALJ did not pose a hypothetical question to the VE or otherwise elicit any further testimony from the VE. (Tr. 39-40). Neither the plaintiff or the plaintiff's representative posed any questions to the VE to attempt to show any limitation on the plaintiff that would prevent her from her past relevant work. The ALJ carefully examined the medical evidence of the relevant time period and concluded that the Plaintiff's impairments did support a finding of limitation to a full range of sedentary work. (Tr. 22-23). The ALJ determined that the Plaintiff was capable of performing past relevant work as a receptionist and a secretary – work that did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. 21-23). Therefore, the ALJ found that the Plaintiff was not disabled because her claim did not pass the fourth step of the sequential process. (Tr. 23.) Thus, the Magistrate Judge believes that the ALJ was not required to pose a hypothetical question regarding the Plaintiff's cough and fatigue because the Plaintiff's disability claim did not pass step four of the five-step sequential process.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc)).

ENTERED this 15th day of July, 2011.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge